```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND


_____
                                   )
KATHLEEN T. WATERBURY,             )
                                   )
          Plaintiff,               )
                                   )
          v.                       )    C.A. No. 16-142 S
                                   )
CITY OF EAST PROVIDENCE, et al.,   )
                                   )
          Defendants.              )
_____)
```

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court are Cross-Motions for Summary Judgment filed by Plaintiff and Defendants. (ECF No. 10 ("Plaintiff's Motion") and No. 11 ("Defendants' Motion").) Defendants filed an Opposition to Plaintiff's Motion (ECF No. 16) and Plaintiff filed a Reply (ECF No. 20). For the reasons that follow, Plaintiff's Motion is GRANTED and Defendants' Motion is DENIED.

I.  Background

Plaintiff alleges that the City of East Providence ("the City") violated her procedural due process rights when it terminated her without cause or any opportunity to be heard. The facts of this case are laid out in detail in the parties' briefs; the Court will only recount those facts relevant to this Order. The narrow question at issue is whether Plaintiff was an at-will employee at the time of her termination, in which case she would

have no constitutionally protected property interest in her continued employment. See King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir. 1997) ("An at-will employee, however, has no reasonable expectation of continued employment.").

Plaintiff was hired as Director of Human Resources by the City Manager on January 24, 2013. (Ex. 1 to Pl.'s Mot., ECF No. 10-3.) Plaintiff's letter of appointment clearly states the Human Resources Director is a "non-union, full-time position with an at-will employment status." (Id. (emphasis added).)[1]  However, the letter of appointment further states: "The term and removal of the Human Resources Director shall be in accordance with Chapter 11, Personnel, of the Revised Ordinances of the City of East Providence [("Chapter 11")]." (Id.)

Chapter 11 defines the "[c]lassified service" as "all offices and positions of trust or employment in the city service, whether paid or unpaid, full-time or part-time, temporary or permanent, existing or hereafter created, except elected officials, those appointed by the city council and those appointed or employed by the school committee." (Ex. 2 to Pl.'s Mot. § 11-1, ECF No. 10-3.) A "[c]lassified employee means any employee occupying a

---

[1] In addition to signing the letter of appointment, Plaintiff submitted a "Certification for Medical Insurance Benefits" in which she checked off that her position was "at will." (Ex. B to Defs.' Statement of Undisputed Facts, ECF No. 12-2.)

position in the classified service." (Id.) Section 11-62 – Status of employees – states:

> All employees holding positions in the classified service shall:
> (1) Have permanent status if they have held their present positions or have been employed continuously in a position in the city service for at least six months immediately preceding the effective date of this chapter.
> (2) Serve a probationary period of six months before acquiring permanent status if they have held their positions for less than six months immediately preceding the effective date of this chapter.

(Id. § 11-62.) With respect to discharge of classified employees who have completed their six-month probationary period, Chapter 11 provides:

> An employee may be discharged by the appointing authority for activities prohibited in the Charter and for insubordination, inefficiency, abuse of sick leave, misconduct, disloyalty or other similar just cause. No discharge of a permanent classified employee shall take effect, unless five days prior to the effective date thereof the appointing authority shall give to such employee a written statement setting forth in detail the reasons therefor and shall file a copy of such statement with the director. Any permanent classified employee shall have the right to appeal to the city manager and further appeal to the hearing board in accordance with provisions of this chapter.

(Id. § 11-69(d).)

II. Discussion

Plaintiff argues it is Chapter 11, not the stated "at-will employment status" in her appointment letter, that controls:

> [L]ike all permanent, classified City employees – which, incontrovertibly, Ms. Waterbury was beginning in August 2013, when she completed her probationary period – Ms.

3

> Waterbury became a tenured public employee with a reasonable expectation in continued employment because the City's Charter and Revised Ordinances make it clear that, once her probationary period ended, Ms. Waterbury could only be terminated for cause.

(Pl.'s Mot. 2-3, ECF No. 10-1.) Plaintiff further notes that "those words ['at will'] appear in the very same paragraph of the agreement in which the City explicitly and expressly agrees that Ms. Waterbury can only be terminated in accordance with the procedural protections against removal set forth in the Revised Ordinances." (Id. at 3.) Thus, according to Plaintiff, "[t]he City's putative position that the appearance of the words 'at will' in the agreement negate entirely the City's express agreement that Ms. Waterbury's term and removal would be in accordance with the City's personnel ordinances is absurd and unavailing." (Id.) Plaintiff further offers affidavits from herself and former City Manager Peter Graczykowski stating that "reference to 'at will' in Ms. Waterbury's contract was nothing more than a shorthand means of distinguishing her individually negotiated contract from those of other City employees whose agreements were collectively bargained by City unions and associations." (Id. at 4.)

Defendants counter that "[P]laintiff is confusing the process owed with whether a constitutionally protected property interest exists." (Defs.' Mot. 7, ECF No. 11-1.) The letter clearly states that her position has "an at-will employment status," and thus, say Defendants, the reference to Chapter 11 merely establishes

4

that she is entitled to the <u>procedural</u> protections outlined in the ordinance. Even if she were entitled to those procedures by contract, she could not make out a constitutional due process claim without a property interest in her continued employment. Defendants further argue that, because the text of the letter is unambiguous, it would be improper for the Court to consider the affidavits Plaintiff submitted.

The Court agrees with Defendants that the plain text of the contract is unambiguous and, therefore, it may not consider external evidence. <u>See</u> <u>Rivera v. Gagnon</u>, 847 A.2d 280, 284 (R.I. 2004) ("If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written."). Recognizing that "ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate," the Court must consider "whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." <u>Paul v. Paul</u>, 986 A.2d 989, 993 (R.I. 2010) (quoting <u>Garden City Treatment Ctr., Inc. v. Coordinated Health Partners, Inc.</u>, 852 A.2d 535, 542 (R.I. 2004)). Here, "at-will employment" has a clear and unambiguous common meaning. The Court need not look outside the contract as written to interpret this term. Furthermore, the Court agrees with Defendants that, in light of the clear intention to make Ms. Waterbury's employment "at will," the reference to Chapter 11

5

attempts to invoke procedural protections only, and does not intend to create a constitutional property interest in her continued employment. Beyond that, the affidavits are self-serving and even absurd. No experienced human resources professional worth his or her salt would dare use the term "at will" in an employment contract as short hand for anything. Rhode Island law has been clear for decades that the term "at will" means an employer may fire an employee for good reason or bad, or no reason at all, as long as it is not a legally prohibited one. See Roy v. Woonsocket Inst. for Sav., 525 A.2d 915, 917, 918 n.2 (R.I. 1987).

But this does not end the matter. While it is clear to the Court that the parties intended to form an at-will employment relationship, the question of whether the "at will" clause of the contract is valid lingers because Chapter 11 is so restrictive and explicit with respect to City employment. City ordinances are, in effect, statutes in their application to the municipality. They are the law of the land, at least that bounded by the municipal boundaries. And just as the at-will rule in Rhode Island is clearly understood, so is the principle that parties may not contract around the law. See, e.g., State v. Rhode Island Alliance of Soc. Serv. Emp'ees, Local 580, SEIU, 747 A.2d 465, 469 (R.I. 2000) ("Thus, if a statute contains or provides for nondelegable and/or nonmodifiable duties, rights, and/or obligations, then neither contractual provisions nor purported past practices nor

6

arbitration awards that would alter those mandates are enforceable."). Therefore, if Chapter 11 prohibits hiring an employee in Ms. Waterbury's position at will, then she became a permanent tenured employee upon completion of her probationary period, notwithstanding the language in the letter.

Chapter 11 identifies only two types of employees: classified and unclassified. Unclassified employees are clearly delineated as:

> (1) Elected officials;
> (2) City manager;
> (3) Officers and officials appointed by the city council;
> (4) Employees appointed by the school committee;
> (5) Consultants, counsel and other professional persons rendering temporary service;
> (6) Such positions involving seasonal or part-time employment or which consist of unskilled work as may be specifically placed in the unclassified service by the city council.

(Ex. 2 to Pl.'s Mot. § 11-1, ECF No. 10-3.) All other employees are part of the classified service, and can only be fired for cause after completion of a six-month probationary period. (See id. §§ 11-1, 11-62, 11-69(d).) Ms. Waterbury's position does not fall into any of the unclassified categories. Therefore, pursuant to Chapter 11, she could only be hired as a classified employee; the City did not have authority to hire her as an at-will employee, and the statement in her employment contract letter is a nullity.

At oral argument, Defendants contended that § 11-61(a) of Chapter 11 – Classification of positions – compels a different conclusion.  Section 11-61(a) states:

> The director, or a person or agency employed for that purpose, shall ascertain the duties and responsibilities of all positions in the classified service and after consultation with the appointing authority and department heads shall recommend a classification plan for such positions.  The plan shall be based upon similarity of duties performed and responsibilities assumed so that the same qualifications may reasonably be required for and the same schedule of pay may be equitably applied to all positions in the same class.  After such classification has been approved by the city manager, the director shall allocate the position of every employee in the classified service to one of the classes in the plan.

(Id. § 11-61(a).)  According to Defendants, because there was no classification plan recommended for Ms. Waterbury's position and she was not assigned to one of the classes in the plan, she was not part of the classified service.  The Court disagrees.  Nothing in § 11-61(a) alters the clear definitions of classified and unclassified employees under Chapter 11.  Even if the director failed to follow the protocol set out in § 11-61(a) with respect to Ms. Waterbury (or anyone else for that matter), this does not change the fact that the City had no authority to exclude Ms. Waterbury's position from the classified service or to create a third category of employees outside the requirements of the ordinance.

Ms. Waterbury completed her six-month probationary period in August 2013. Because she could only be fired for cause after completing her probationary period, she had a property right in her continued employment and the City was required to afford her due process in her termination. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). There is no dispute that the City did not afford Ms. Waterbury "notice and an opportunity to respond," as required by Loudermill. See id. at 546. Accordingly, the Court finds that her termination was in violation of due process, and is void.[2]

III. Conclusion

For the foregoing reasons, Plaintiff's Motion hereby GRANTED and Defendants' Motion is DENIED.

IT IS SO ORDERED.

/s/ William E. Smith

William E. Smith
Chief Judge
Date:  July 12, 2016

---

[2] Nothing in this Order prevents the City from terminating Ms. Waterbury if it provides her with the required process.